as well as Mooney. Alright, our next case for today is Heredia against Capital Management Services. Mr. Stern. Good morning. May it please the court, I'm Philip Stern, Stern Thomas LLP and I represent plaintiff, appellant Mabel Heredia. For three consecutive months, one time each month, Capital Management Services sent a letter to my client that offered a settlement of her debt and said that if it was accepted then Discover Bank, the creditor, might enter, might file a 1099-C form for the forgiveness of debt. So Mr. Stern, am I right to assume that you are not challenging the first part of that statement, the may have tax consequences part in light of later developments? I think to be precise, had the sentence stopped before the word end and not included the... The end Discover may file a 1099-C form. Right, if that was omitted from the letter, that's correct, and I think that falls squarely in Dunbar. Right, that's in Dunbar. So, I have a couple of questions for you. One of them may seem weird, but I've really not found an answer to it. I understand that the filing of a 1099-C form is required if $600 or more is at issue. But does anybody ever file one when it's $500? Is it actually forbidden to file it, or is it just that people must start filing at $600? My understanding is that two aspects of it. Let me just be clear, because there's a lot to the regulation. There are other exceptions. One of the exceptions of the reporting requirement is that you don't have to report unless there's $600 or more of stated... Right, of the forgiveness. There are other exceptions, but putting those to the side as not being relevant, there is... And also the only requirement is that you report the amount of principle, the stated principle. There's no requirement to report forgiven interest or other charges that may have accrued. But the form does allow you to report that. So it can be reported. And so to directly answer your question, I think that a covered entity that is obliged to report can also report voluntarily. But we've alleged in the complaint that Discover, like other credit card companies, does not report unless they are legally required to do so. And that's how we get to the impossibility. So let me ask you this. We struggle sometimes with the unsophisticated consumer test, and we attribute a little bit more savvy to people than some of the circuits do. But actually the letter doesn't say a word about the Internal Revenue Service. The letter says, and Discover may file a 1099-C form. So wouldn't you have to know that that was an IRS form? Is that something everybody knows? I don't know that everybody knows. I would argue that, well, under two things. Number one, that we're in a 12B6 standard. So we get the... We're entitled to the benefit of the reasonable inferences. Judge Griesbach, in fact, made a point about that, that even though it doesn't say IRS, it's understood from the sentence. And I think that enough people get some form. I mean, there's a whole variety of 1099 forms. Oh, I know. And so I think people understand that if you're filing, who would Discover Bank be filing with a 1099-C? Either you're completely ignorant, you have no idea what that is, or you have some understanding that you've seen a 1099 in some form. You get 30 cents of interest on your bank account, you get a 1099. But you don't get a 1099 for 30 cents of interest. I've gotten 30 cents of interest occasionally. No, but I'm just saying it doesn't require a lot. But the reason why I pick a low number is because I think it's so widespread that people get 1099s. So the reason I'm asking for is because... Judge Rogen had a question. No, no. Why don't you finish your... And then I'll... The reason I'm interested is because if it's possible that Discover might file that form, then it seems to me the second half of the sentence might be analyzed the same way the Dunbar half of the sentence was analyzed. Although you respond, well, 12B6, we say they never, ever do it. What we're worried about, ultimately, in the Fair Debt Collection Practices Act is heavy-handed tactics and scaring somebody that the IRS is gonna suddenly become involved in their personal affairs might be such a tactic if that's really the case. But as it is, I don't know. It's a pretty small statement. Discover may file this form, but may not. And I think there's... And clearly, I think the cases have distinguished that IRS reporting language in some form from the cases that talk about the tax consequences. So we're clearly not talking about a Dunbar situation. Right, right, okay, I get you. But I would say this, under the 12B6 standard, the allegations in our complaint, and I would tell you, I think it's paragraphs 47, 48, and 53, that foreclose the issue of the possibility that Discover might do so. And I think there's also another important distinction in the law, and particularly 1692E5, which says about not threatening to take action, it says, which cannot legally be taken. That's one issue. So in a sense, if they could legally take it, that that wouldn't apply. But it says, or, that's not intended to be taken. And I think that that covers this situation that the way we've pled it is Discover would never exercise that right to voluntarily file a 1099-C. I had reserved for a minute, so. I think Judge Hoffman has a quick question, so. Suppose a debtor has multiple accounts with different amounts of debt. And capital management bought the debt, and it's offering to write off $400 of principal for a Discover card account, and $400 of principal for a Visa account. Do you know if capital management has to file a 1099-C for the combined write-off? My understanding of the regulation is that they would not be obligated, that each debt is treated separately. Okay, and I do have another question for you. Does information in a Dunning letter have to apply only to the specific individual to whom the letter is addressed? Or is it okay to have a form letter that contains language that addresses various contingencies that may occur with various debtors? I have sort of two parts to that. One part is what I'd like to see what the law is, but the other one is what I think where the law is. I would say is that it's easy enough for them to, in their computers, know what the numbers are, and just omit that language from their form letter when it's being generated. But there are cases that, unlike this case, that talk about that the creditor may have an obligation, may have an obligation to file a 1099-C if the amount forgiven in principle exceeds $600. Then they've told the consumer. So you have the case that, one of the cases that defendants cited, talks about that a consumer who's got a debt of, say, $300, that's the total amount of the debt. No matter how much, even if they forgive the whole thing, it's not gonna, they'll know by reading the letter that says, oh, that only applies when it's $600 or more. They know their debt is not $600 or more, so they know it can never happen. Was there a difference between principle and interest? There is. Usually those letters have a whole lot of interest piled up. Yeah. That's correct. Usually on these credit card debts, by the time they get there, it's a lot of interest because of the way they compound interest and it gets added back in. But clearly, if you have a situation, a fact situation where the total amount claimed is less than $600, 599, if it's less than that, there's no way there's gonna be a 1099 issued. So if the letter says the creditor may issue 1099s in those circumstances where the amount forgiven is $600 or more, by reading the letter, the consumer knows, oh, that doesn't apply to me. And so I think that that would be lawful. I think so, you could do a form letter. But I think the technology is such, it's pretty easy for them to just have a trigger that says don't put any of that language in there if it's under 600. Okay, I will give you some rebuttal time. I know we ate up your argument time. Mr. Marcus? Good morning, Your Honors. Morgan Marcus on behalf of Capital Management. The issue before this court is whether Capital Management's language complies with the FDCPA and with this court's decision in Dunbar. Capital Management's position is that it undisputably does. Indeed, the parties agreed to stay the case in the district court, believing that Dunbar would be entirely dispositive on this case. While Capital Management believes that Dunbar is entirely dispositive, here at a minimum, the district court was correct in ruling that the language here is conditional. It does not imply that Capital Management can do something that they are not authorized to do. But why is it with this? We're not talking about the may have tax consequences. Your opponent has rightly said that Dunbar takes care of that. At least in the second letter that Ms. Heredia received, as alleged, Discover wouldn't file, would, may not, wouldn't ever file a 1099-C because all of the forgiveness numbers are below 600, which, you know, the prompt option, the two part, the three part. And so saying you may file something that you're in fact not going to file seems misleading. Well, Your Honor, there's two parts to that. First of all, the total balance of that was $1,892.43. That letter indicated that the consumer could also call in to discuss payment arrangements. Quite often, consumers do call in to discuss payment arrangements, even though the letter states that the Capital Management, for instance, would settle for these amounts. And the consumer says, I can only settle for, I only have $200. I only have $100. And under that hypothetical, undisputably the debtor may face potential tax consequences. So even based upon the new balance. That's the tax consequences, though. That's not the 1099C, you know. So the November letter, you can have a single payment of $1,343, which is a principal forgiveness of 548, or there were the installment plans with 454 or 359. That's all principal forgiveness below 600. And what I'm trying to say, Your Honor, is the debtor could have called in and said, I can only afford to pay $200 total. That's even less. That's even less than, I mean, the debtor, you didn't even offer that. And to get that far down the set of hypotheticals, you know, it seems to me that letter should be taken on its face. Discover was never in a million years going to file a 1099C on the basis of that offer. Your Honor, what I'm trying to explain is there could have been potential tax consequences if the consumer had called in, part one. Moreover, that language is also conditional. It doesn't say that the discoverer is going to file a 1099C no matter what. It says that- But why is it not misleading to say to somebody, I might file a form with the IRS, the 1099C, with respect to your account, when in fact the probability that you were going to do that is zero? That's why I ask the question about whether Discover, or anybody else for that matter, ever files 1099Cs for the fun of it, you know, when they have a $300 forgiveness or a $200 forgiveness. And as far as I can tell, people don't do that. And certainly on this record, it is alleged, it could be further factual investigation down the line, but it's alleged on this record that Discover never files a gratuitous 1099C. Well, Your Honor, that language is simply following what the IRS statute says, which part one, we've already discussed about, is the simple fact that settling a debt for less than the balance owed may have tax consequences. Right, which we're all fine with. Nobody's- And part two, that- That you may file a 1099C depends on the amount of money. That's correct, but it's not saying that Discover or Capital Management is going to file a 1099C. But you're looking from the other end of the telescope. Judge Rovner, go ahead. What really bothers me is that, I am thinking about the unsophisticated debtor, who by definition has gotten into some sticky financial situations. That debtor may be afraid of any embroilment with the IRS. And that language, it seems to me, encourages the IRS-fearing debtor, actually that's all of us, we are all IRS-fearing, to do whatever it takes to keep the IRS out of things. Well, Judge, first of all, and I think what was discussed earlier, it doesn't reference the IRS in any way. It simply says Discover may file a 1099C. You know, you really have to have come from Mars not to know what it, you know. Well, second of all, to your point, Your Honor, if you're looking at the sequencing of the letters, the settlement offers as the letters go get larger. So by the time of January of 2017, there would be potential tax consequences of, I'm sorry, by the time we get to the January 2017 letter, it reflects that the settlement offer to the consumer is in fact greater. So to your point that it leads to the implication that the consumer will call in to try to pay the debt in full, in fact here the settlement offer has got more significance to this consumer. So it leads more to the implication that settling of the debt was what capital management and in fact Discover was trying to have happen here rather than trying to compel the debtor in some way to pay the debt in full. And that's what the cases ultimately look at. Both the, that's what Dunbar looked at and that's what this court looked at in the Taylor case, which was the condition, one, the conditional nature of the language. This language ultimately is conditional. It's not saying that, it's not saying that capital management or Discover will do something. It's saying that they may do something should the certain, I'm sorry, were you saying something, Judge? Yeah, you just made a point that you see you're already individualizing the communications at issue here. Each one, as you just noted, states the amount of debt owed and three different individualized options about how to pay off the debt. The creditor is already doing so much individualization. How hard would it be to have a code that adds or subtracts the 1099C language based on whether the forgiven principle is over or under $600? Seems to me it'd be awfully easy. Well, Your Honor, the issue with that is that there are multiple exceptions that apply to reporting requirements, not only based upon the $600 requirement. Capital management has provided certain information when an accountant is placed with them and ultimately at the end of the day, Discover, not capital management, is the entity that makes the determination on whether or not there's gonna be some sort of 1099C that ultimately needs to get filed. So capital management is sending the 1099 information based upon the information that they're provided by Discover. But if Discover provides some information as in the November letter, saying that basically the highest forgiveness is $548, it really doesn't take a genius computer programmer to know that 548 is less than 600 and Discover isn't gonna file a 1099. Now, I agree with you that you have a slightly more complicated case with the December and January letters because the reduction in December was 735 and it was 927 in January and that would require somebody to know how much of that was principle and how much of it was interest and it doesn't appear nearly as clear on its face, at least to me. But the November letter is unambiguous. And just to go back to that, Your Honor, I don't think my hypothetical earlier would have fairly explained it, but the consumer can call in and make a payment. It doesn't necessarily need to be the payment contemplated in the letter. So if the consumer did call in and make some sort of settlement agreement with capital management and or Discover that had tax implications, and that would not, if we struck out that language and it wasn't in that letter and the consumer seven months later at the end of the year got a 1099 from Discover, they would call in and say, why am I getting this 1099? It would be very easy for the person at the other end of the phone to say, okay, we've decided to settle this and instead of making a payment of $1,343, we're gonna let you settle this once and for all for $200. And by the way, we're forgiving a lot of debt and so you're gonna get a tax form. Well, the problem with that is we can't definitively make that statement because there are exceptions that do apply. And if you say you are going to get a tax form, that would potentially- But at least you might get a tax form in that situation. That's what distinguishes the November letter when you would never get a tax form from the December and January letters. Well, on the face of the letter based on the settlement offers, that position may be correct, but again, the consumer could call in- The consumer isn't told about all these other settlement options in these letters. Sorry, which letter are you referencing specifically? Well, I'm gonna look. Here's the October letter. Here's the November. In an effort to liquidate, we're making the following settlement offers, A, B, C. And then they tell you how to pay. Maybe you can do a post-dated check, our representatives. And then there's this sort of vague for payment arrangements. It sounds still like it's how are you handling A, B, and C. I don't see quite the clear statement about, oh, and then it's really not A, B, and C. It's A, B, C, and D, anything else. Well, and to your point, Your Honor, as you read, the letter says to make payment arrangements, you can call into capital management. But it says the amount of money you want to save is in your control, but it's all in reference to A, B, and C as I read this letter. Again, Your Honor, the consumer could call in and make a payment arrangement other than what is contemplated in that letter. And it doesn't say that in the letter. It says you can make a different settlement offer and we might accept it or we might not. Never does it say that in this letter. I mean, I'm looking at the letter. It doesn't say that. Your Honor, at the end of the day, this language is ultimately conditional, which was found permissive in Dunbar, in Taylor, and... But the thing about Dunbar is that it could have happened. And the question is, is conditional language enough to bail you out for a circumstance that is never going to happen? If I can answer that, Your Honor. One, I believe that it could have happened here. But two, in Dunbar, when the Seventh Circuit looked at a district court's decision in Sledge v. Sands, it looked at a circumstance where there would never have been tax implications to the consumer. And the Seventh Circuit, I'm sorry, this court in Dunbar said that the language in that case was permissible. And that language in that case said, under certain circumstances, there may be tax implications. It did not say... But on the facts of Dunbar, that was true. I mean, I really hate to dig into our opinions all the way down to some district court opinion that somebody cited. Well, I think that was important in Dunbar because it was referenced specifically in the end. It said the conditional language was acceptable and there were circumstances where... Again, and that's... Just that people might have gotten some money. They might have won the lottery or something. In that Sledge v. Sands case, that there would not have been tax implications to certain individuals, and the Dunbar court said that that language was permissible. You know, in this case... Oh, no, go ahead. In this case, all of the information is in the hands of the creditor. That makes this a different case to me than Dunbar. It knows whether the creditor knows whether it's forgiving more than $600 in principle or not. Could easily have a form letter that includes the language if the amount is over $600, and excludes it if the amount is under 600. The problem with that, Your Honor, is where debt collectors have started including language regarding 600 or less than 600. They've been sued. I mean, I think you saw from our brief, debt collectors have been sued for any type of language where they're discussing possible exceptions that may apply to the $600 threshold. That's why this language is as vanilla as possible in terms of trying to advise the consumer that there may be tax implications, but also there may be exceptions that may apply. All you had to do is put a period after there may be tax consequences. No one says you can't. We believe that this language is still conditional and entirely permissible under Dunbar. Well, I think you've made your point, so we thank you very much. Thank you. Okay, so anything further, Mr. Stern? You were pretty much down to it as well, but we went over, so I'll give you a minute and a half. Thank you, Your Honor, and I think I'm, hopefully I won't use it. I just want to be really clear. I just want to get back to the discussion we had before about whether consumers know what 1099 means. I think it's also important to realize where the 1099 is used in context. It's in a three-sentence paragraph where the word tax is used three times, and in fact, the way capital management wrote the first sentence, it made it in the conjunctive. So it said, settling a debt for less than the balance owed may have tax consequences, and Discover may file a 1099-C form. I think in context, when it's talking about tax all the time, I think that it certainly alerts you that. We cannot provide you with tax advice, yeah. Yeah, so it's some tax authority, and, you know, so. And I just wanted to say, in my response to Judge Rovner's question about how they could, about the forms, and could they come up with a form, I think the case that's cited in the brief, Roan, it's a 2015 Southern District of Indiana case where that's exactly what happened. The debt was less than 400. They offered to settle for 236, but the language of the letter added the component that a settlement where $600 or more is being written off, that there then may be, conditional, may be a requirement to report it to the IRS. And so I think under that circumstance, the way the court reasoned it, they granted a motion to dismiss in that case, saying that a consumer is gonna know that that conditional language doesn't apply to them based upon the amounts. Okay. That's it, thank you. All right, thank you very much. Thanks to both counsel. We'll take the case under advisement.